**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **PARISH OF CAMERON ET AL** | **CASE NO. 2:26-CV-01337** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ALPINE EXPLORATION CO INC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Before the Court is a Motion to Remand [Doc. No. 30] filed by Plaintiffs, the State of Louisiana and Cameron Parish (collectively, "Plaintiffs"). Defendants, Chevron U.S.A. Holdings, Inc. and Chevron U.S.A., Inc. ("Chevron"); The Texas Company; and Devon Energy Production Company, L.P. ("Devon") (collectively, "Defendants"), oppose the Motion [Doc. No. 38].[1] Plaintiffs filed a reply [Doc. No. 50].

For the following reasons, the Motion is **DENIED**.

## I. Background

If these cases[2] are examples, "the term 'civil procedure' is an oxymoron." *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 357 (5th Cir. 2018).[3] This is one of 42 cases filed in state court in 2013 but that has dribbled back and forth between state and federal court multiple times. *See Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 329–31 (5th Cir. 2024) ("*Plaquemines III*"), *vacated and remanded sub nom. Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1059 (2026).

[1] All Other Defendants adopt, by reference, Defendants' arguments. *See* [Doc. Nos. 33–37, 39–45].
[2] This ruling also covers: 26-cv-1335 (W.D. La. April 27, 2026), 26-cv-1336 (W.D. La. April 27, 2026), 26-cv-1339 (W.D. La. April 27, 2026), 26-cv-1340 (W.D. La. April 27, 2026), 26-cv-1341 (W.D. La. April 27, 2026), 26-cv-1344 (W.D. La. April 27, 2026), 26-cv-1347 (W.D. La. April 27, 2026), and 26-cv-1349 (W.D. La. April 27, 2026), and 26-cv-1350 (W.D. La. April 27, 2026).
[3] All internal citations, quotation marks, and footnotes in case cites are omitted unless otherwise noted.

Plaintiffs allege that Defendants violated Louisiana's State and Local Coastal Resources Management Act of 1978 ("SLCRMA"), La. Rev. Stat. Ann. § 49:214.21, *et seq*., and related state and local regulations, rules, orders, and ordinances.[4] SCLRMA creates a cause of action against those who operate in Louisiana's Coastal Zone without a coastal use permit or who operate beyond their permits' authorization. *Id.* § 214.36(E). Plaintiffs allege Defendants decades-long conduct—oil drilling, building and using waste pits, and canal dredging—in this case's Operational Area ("OA") in Cameron Parish's Coastal Zone marred the Coastal Zone, resulting in environmental changes, faster land loss, and amplified flood and storm-related damage.[5]

This Court first remanded these cases back to state court in 2013 after it found no diversity, federal question, or admiralty jurisdiction. *Plaquemines III*, 103 F.4th at 330. Then, Defendants removed the cases under a federal officer removal theory, which this Court and the Fifth Circuit rejected. *Id.* Defendants appealed those rulings to the Supreme Court, which clarified the removal test for federal officer jurisdiction and vacated the prior rulings for reconsideration in light of the clarified test. *Chevron*, 146 S. Ct. at 1060–63. So, Defendants removed these cases again.[6]

Defendants' current removal relies on the same theory as their last one—namely, that they acted as federal officers since they contracted with the federal government to supply aviation gas ("avgas") during World War II and Plaintiffs' suit is related to those World War II-era activities.[7] Plaintiffs, emphatically, disagree.

---

[4] [Doc. No. 1-1, pp. 13–14].
[5] [Id. at pp. 24–30].
[6] [Doc. No. 1].
[7] [Id. at p. 5].

They argue that the case should be remanded back to state court because Defendants do not meet the requirements for federal officer removal[8] and the removals are otherwise improper as they are: (1) untimely, (2) based on same grounds as before without any new facts, and (3) barred by the voluntary-involuntary rule.[9]

The parties briefed all relevant issues, and the matter is now ripe.

## II. Legal Standard

Federal courts "are all of limited jurisdiction[.]" *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 428 (2026) (quoting *Kempe's Lessee v. Kennedy*, 9 U.S. (5 Cranch) 173, 185 (1809)). Cases in federal court typically fall under one of two categories: diversity jurisdiction (where the parties are from different states) and federal question jurisdiction (where the suit is based on or involves federal law). Rarely, however, does a third category apply: federal officer removal. This allows a defendant to remove to federal district court any suit that is (1) brought in a state court against the United States, a federal agency, a federal officer, or a person "acting under" a federal officer, such as certain private parties hired to assist federal officers, and (2) that is based on or related to any act that person undertook "under color of such office." 28 U.S.C. § 1442(a)(1); *see also Chevron*, 146 S. Ct. at 1057.

As always, the removing party has the burden of showing federal jurisdiction. *Plaquemines III*, 103 F.4th at 333. But unlike "other removal doctrines, federal officer removal is not narrow or limited." *Id.* To the contrary, § 1442 removals are liberally construed without a thumb in favor of remanding a case "in view of its chief purpose—

[8] [Doc. No. 30-2, pp. 18–30].

[9] [Id. at pp. 13–18].

to prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so." *Louisiana v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992).

To remove a case to federal court under § 1442, "a removing defendant must satisfy three requirements": (1) "the removing defendant must be the United States, a federal agency, a federal officer, or a person acting under a federal officer, such as certain private parties hired to assist federal officers"; (2) "the suit must be for or relating to any act under color of such office"; and (3) "the removing defendant must assert a colorable federal defense." *Chevron*, 146 S. Ct. at 1057–58. For clarity, the Court addresses the requirements for each prong later as part of its analysis.

## III. Law and Analysis

The Court addresses Plaintiffs' arguments in reverse. First, whether the removal is untimely, based on the same grounds as before, or barred by the voluntary-involuntary rule. Because if so, the analysis ends. If not, it turns to the removal test.

### A. Whether Defendants' Removal is Timely, Based on New Grounds, or Barred by the Voluntary-Involuntary Rule

*First*, Plaintiffs argue that this removal is untimely.[10] A defendant must ordinarily file their notice of removal within 30 days after they receive "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the" defendant is served. 28 U.S.C. § 1446(b). If, however, "the case stated by the initial pleading is not removable," the defendant may file their notice of removal "within 30 days after" they receive an "order or other paper from which it may first be ascertained that the case is" removable. *Id.* § 1446(b)(3).

[10] [Doc. No. 30-2, pp. 13, 16].

A decision in unrelated cases is generally not an order or other paper under § 1446. *See Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 267–68 (5th Cir. 2001); *see also Neal v. Ameron Int'l Corp.*, 495 F. Supp. 3d 375, 389 (M.D. La. 2020). But "a decision in an unrelated case may constitute an order upon which removal can be based where the same party was a defendant in both cases, the cases involve similar factual circumstances, and the decision resolved a legal issue that has the effect of making the case removable." *Neal*, 495 F. Supp. 3d at 389 (citing *Green*, 274 F.3d at 267–68). In *Neal*, the Middle District applied *Green* and concluded the Fifth Circuit's then-recently-issued *Latiolais* ruling, which clarified the test for federal officer removal, is an order under § 1446(b)(3). *Id.*

Likewise, here. Defendants meet all three *Green* requirements: Chevron and Devon were defendants in both *Chevron* and these cases (same defendants check), *Chevron* and these cases involve alleged environmental harm to Louisiana's coastal zone from the defendants oil-and-gas drilling activities (similar factual situations check),[11] and *Chevron* clarified the test for federal officer removal on the one prong Defendants did not previously meet (legal effect of making the case removable check). So, by meeting all three *Green* requirements, Defendants' instant removal is permissible if it is also timely. It is. The Supreme Court issued the *Chevron* ruling on April 17, 2026. *See* 146 S. Ct. at 1052. And Defendants removed the suit to this Court on April 27, 2026,[12] which was 10 days after the Supreme Court issued *Chevron* and within the § 1446(b)(3)'s 30-day deadline. Thus, the instant removal is timely.

[11] [Doc. No. 1].
[12] [Id.].

*Second*, Plaintiffs posit that this removal has the same factual basis as before.[13] The Fifth Circuit holds that usually, "once a case is remanded to state court, a defendant is precluded only from seeking a second removal *on the same ground*." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996) (collecting cases). But a defendant may file a second removal petition "when subsequent pleadings *or events* reveal a new and different ground for removal." *Ashford v. Aeroframe Servs., L.L.C.*, 96 F.4th 783, 794 (5th Cir. 2024) (emphasis added). In both *S.W.S.* and *Ashford*, depositions, taken after the first remand, revealed new factual bases for removal. *See id.* The Fifth Circuit, borrowing § 1446(b)(3)'s language, explained that the new deposition transcripts "constitute[d] a new paper or event that changed the facts regarding the removableness of the case." *Id.* As such, the new removals did not violate the general rule against successive removal on the same grounds.

Again, so too here. Defendants filed their instant removal after the Supreme Court issued *Chevron*.[14] As noted above, *Chevron* is a new "order or other paper" under § 1446(b)(3). And as discussed above, *Chevron* clarified the federal officer removal test on the one prong that Defendants previously did not satisfy. So, applying *S.W.S.* and *Ashford*'s reasoning here, *Chevron* is "a new paper or event that changed the facts regarding the removableness of the case." *Id.* Therefore, Defendants' instant removals are not barred by the rule against successive "removal *on the same ground*." *S.W.S.*, 72 F.3d at 492.

[13] [Doc. No. 30-2, pp. 14–15].
[14] [Doc. No. 1].

*Third*, Plaintiffs invoke the voluntary-involuntary rule.[15] This decades-old rule holds that a case that is "non-removable on the complaint, when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court" but only "by the voluntary amendment of his pleadings by the plaintiff." *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961). The Fifth Circuit recently extended this rule to federal officer removal and required that even removals based on an "other paper must result from the voluntary act of a *plaintiff*." *Plaquemines Par. v. Chevron USA, Inc.*, 7 F.4th 362, 373 (5th Cir. 2021).

Here, however, both parties note Defendants are relying on the *Chevron* ruling, which is an *order or* other paper. The question, then, is whether *Gaitor*'s voluntary-involuntary rule applies to federal officer removals based on an order. Some context is needed before answering that question.

In 2011, decades after the Fifth Circuit decided *Gaitor* in 1961, Congress amended § 1446 and inserted what is currently § 1446(b)(3):

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758. Ordinarily, "when Congress adopts the language used in an earlier act," courts must "presume that Congress adopted also the construction given by [the Supreme Court] to such language and made it a part of the enactment."

[15] [Doc. No. 32-1, pp. 17–18].

*Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 270 (2020). That presumption, however, cannot apply to circuit court opinions for several good reasons: Congress cannot be expected to follow circuit court decisions in the same way that it would a Supreme Court decision, Congress cannot implicitly adopt one circuit's interpretation when another circuit disagrees with or has not addressed a question, and implicitly adopting circuit court rulings encroach on the Supreme Court's authority to issue nationwide precedents. *See* U.S. Const. art. III.

With that aside, the Court now turns to whether *Gaitor*'s atextual, albeit decades-old, voluntary-involuntary rule applies to federal officer removals based on an order. The answer: it does not apply. The Court so concludes for several reasons. For starters, Congress' addition of "order" in § 1446(b)(3) overrules *Gaitor*'s construction that a case that is "non-removable on the complaint, when commenced, cannot be converted into a removable one . . . by an order of the court." *Gaitor*, 287 F.2d at 254. What's more, applying *Gaitor* to "orders" has absurd implications. It would, effectively, require a plaintiff who successfully remanded his case to state court to take a voluntary act, like an appeal, for the "order" to allow a second removal. No rational plaintiff will do so. And it is well-established that courts will not adopt a statutory construction that suggests Congress intended such absurd results. *See Ecee, Inc. v. FERC*, 611 F.2d 554, 564 (5th Cir. 1980) (collecting cases). Thus, the voluntary-involuntary rule does not bar Defendants from relying on the "order" in *Chevron* to remove these cases.

In sum, the Court concludes that the instant removal is not untimely, is not based on the same grounds as before, and is not barred by the voluntary-involuntary rule. The Court, therefore, turns to whether Chevron, Devon, or the Other Defendants meet the requirements for federal officer removal in that order.

### B. Whether Chevron Meets the Federal Officer Removal Test

Recall, a defendant that seeks to remove a case to federal court under § 1442 "must satisfy three requirements": (1) they must be "a federal officer or a person acting under a federal officer, such as certain private parties hired to assist federal officers"; (2) "the suit must be for or relating to any act under color of such office"; and (3) "the removing defendant must assert a colorable federal defense." *Chevron*, 146 S. Ct. at 1057–58. The Court analyzes each prong in turn.

#### 1. Whether Chevron "Acted Under" a Federal Officer

Under § 1442, private "persons, including corporations, may invoke the federal officer removal statute only if they were 'acting under' a federal officer," meaning they assisted with or helped carry out "the duties or tasks of the federal superior." *Plaquemines III*, 103 F.4th at 334. The Supreme Court construes "acting under" broadly and liberally but notes that it "is not limitless." *Id.* The "acting under" prong requires a private party to "show that a federal officer exerted a sufficient level of subjection, guidance, or control over the private actor." *Id.* Mere compliance with a law is insufficient to show assistance "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* "A private party working under a federal contract to produce an item the government needed is the archetypal case of a defendant acting under a federal officer." *Id.*

Chevron meets that broad but not limitless test. Chevron provides plentiful contracts that their predecessors entered into with the federal government during World War II to supply the government with avgas. At the outset, the Court takes judicial notice, via the Byrnes Declaration,[16] that the following companies are all corporate predecessors of Chevron:

- Amerada Petroleum Corporation ("Amerada"),
- Gulf Oil Corporation ("Gulf"),
- Pure Oil Company ("Pure"),
- Standard Oil Company of California ("SOC"),
- The Texas Company ("Texaco"), and
- Union Oil Company ("Unocal").[17]

Returning to this case, Chevron provides contracts between Gulf and the Defense Services Corporation ("DSC") and Texaco and the DSC that specify not only the quantity of avgas that the federal government will purchase from each but also specifies the size, layout, and other parameters of each Texaco's and Gulf's oil refinery in Port Arthur, Texas.[18] These contracts provide excruciating details not only on what the government expects from each company—avgas—but also where, when, and how they produce the avgas. Chevron also provides public lists of World War II-era government contract suppliers that include Gulf and Texaco.[19]

[16] [Doc. No. 20-1].
[17] [Id. at ¶ 4].
[18] [Doc. No. 38-2, pp. 388–454, 659–76].
[19] [Doc. No. 34-16, pp. 164–65, 229–30].

In sum, these exhibits show that the federal government exerted significant "control" and "guidance" over Texaco's and Gulf's actions during World War II. Therefore, these companies acted, during World War II, in a way that aided the government's war effort. *See Plaquemines III*, 103 F.4th at 334.

Chevron also relies on the same information to show it acted under a federal officer, in most of the related cases before this Court. In *Cameron Parish v. BEPCO*, Chevron highlights the very same (1) contract between Gulf and the DSC,[20] (2) contract between Texaco and the DSC,[21] and (3) public lists of World War II-era government contract suppliers that include Gulf and Texaco.[22]

Whereas in *Cameron Parish v. Bay Coquille*, Chevron mostly relies on two items, the contract between Texaco and the DSC[23] and the public list of World War II-era government contract suppliers, including Texaco,[24] to show they acted under a federal officer for that suit's purposes. Chevron also provides contracts between the DSC and Texaco that list specific parameters to expand the avgas facilities at Texaco's refineries in Lockport, Illinois, and Los Angeles, California, after which the federal government would purchase avgas from those facilities too.[25] Likewise in *Cameron Parish v. Brammer*, where Chevron again relies on these contracts[26] and the list of World War II-era government contract suppliers that includes Texaco.[27]

---

[20] *Cameron Par. v. BEPCO*, 26-cv-1340 (W.D. La. April 27, 2026), Doc. No. 30-2 at pp. 388–454.
[21] *Id.* Doc. No. 30-2 at pp. 659–76.
[22] *Id.* Doc. No. 30-16 at pp. 164–65, 229–30.
[23] *Cameron Par. v. Bay Coquille*, 26-cv-1339 (W.D. La. April 27, 2026), Doc. No. 28-2 at pp. 659–76.
[24] *Id.* Doc. No. 28-16 at pp. 229–30.
[25] *Id.* Doc. No. 28-17 at pp. 93–109, 111–25.
[26] *Cameron Par. v. Brammer*, 26-cv-1349 (W.D. La. April 27, 2026), Doc. No. 25-2 at pp. 625–58, Doc. No. 25-17 at pp. 93–109, 111–25.
[27] *Id.* Doc. No. 25-16 at pp. 229–31.

Conversely, in *Cameron Parish v. BP America*, Chevron only submits the contract between Gulf and the DSC, with detailed guidelines to expand Gulf's Port Arthur, Texas, refinery and the quality and quantity of avgas the government would obtain from that refinery, as evidence that it acted under a federal officer during World War II.[28] And like they did in the above-mentioned cases, Chevron also provides the public list of World War II-era government contractors, which includes Gulf.[29] Finally, Chevron also proffers an invoice between Gulf and the Standard Oil Company of Louisiana for avgas components made by Gulf in Port Arthur and sent to the latter's Baton Rouge, Louisiana, refinery to be made into avgas.[30]

In the above-mentioned cases, the contracts and other documents that Chevron provides are copies of the one it offers in this case.[31] Since the Court finds that these exhibits are sufficient to meet the federal officer removal test's "acting under" prong in this case, the Court concludes the same for the above-mentioned cases too.

Lastly, in two suits, Chevron submits documents about World War II-era activities by two other predecessors: Pure and Unocal. In *Stutes v. BASF*, Chevron first shows a contract between Pure and the DSC where Pure agreed to make avgas for the DSC at Pure's Smith's Bluff, Texas, refinery and to produce other defense supplies at a new plant near their refinery.[32] Next, Chevron provides a contract between the DSC and Unocal to make and deliver avgas at their California refinery.[33]

---

[28] *Cameron Par. v. BP America*, 26-cv-1347 (W.D. La. April 27, 2026), Doc. No. 11-2 at pp. 388–454.
[29] *Id.* Doc. No. 11-16 at pp. 164–65.
[30] *Id.* Doc. No. 11-18 at p. 54.
[31] *See supra* notes 18–30 and accompanying text.
[32] *Stutes v. BASF*, 26-cv-1336 (W.D. La. April 27, 2026), Doc. No. 64-2 at pp. 566–73.
[33] *Id.* Doc. No. 64-18 at pp. 2–12.

Finally, Chevron proffers a public list of World War II-era governmental contract suppliers, which includes Unocal and Pure.[34]

Similarly, in *Cameron Parish v. Ballard*, Chevron highlights the contract between Unocal and the DSC to expand Unocal's Wilmington, California, refinery to the DSC's specifications and then provide the DSC with avgas from the revamped facility.[35] Chervon also notes the public list of World War II-era federal government contractors, which names Unocal as one of the government's main partners.[36]

Like the contracts with Texaco and Gulf, the Pure and Unocal contracts also provide meticulous details about not only the ultimate product—avgas—but also the processes and facilities that make, store, and transport it. And like Texaco and Gulf, Pure and Unocal were also publicly known as major government contractors and helpers. As such, the federal government exerted significant "control" and "guidance" over Pure and Unocal during World War II. Therefore, these companies also acted, during World War II, to aid the war effort. *See Plaquemines III*, 103 F.4th at 334.

Despite all this evidence, Plaintiffs offer three reasons why Chevron did not act under a federal officer during World War II.[37] None are persuasive.

First, they note that Chevron does not provide any evidence that it produced crude oil in the OA during World War II. Consequently, they argue, Chevron cannot show that it acted under a federal officer within the OA during World War II.[38]

---

[34] *Id.* Doc. No. 64-16 at p. 273.
[35] *Cameron Par. v. Ballard*, 26-cv-1341 (W.D. La. April 27, 2026), Doc. No. 20-18 at pp. 1–20.
[36] *Id.* Doc. No. 20-16 at p. 273.
[37] [Doc. No. 30-2, pp. 21–26]. These arguments are the same among all related cases, so the Court addresses them only once.
[38] [Id. at p. 21].

Plaintiffs' premise is correct, but their legal conclusion misses the mark by a long shot. Plaintiffs' argument, as the *Plaquemines III* court noted, conflates the "acting under" and "related to" prongs. *See* 103 F.4th at 335 ("[R]equiring Defendants to show not only that they act[ed] under a federal officer, but also that they acted pursuant to federal directives when they engaged in the conduct giving rise to Plaintiffs' suits . . . impermissibly conflates the distinct 'acting under' and 'connected or associated with' elements of the federal officer removal test."). As such, the Court disposes of Plaintiffs' first argument.

Second, Plaintiffs argue that Chevron's instant removal is precluded under *Plaquemines Parish v. Chevron USA, Incorporated*, No. 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022) (*Plaquemines II*).[39] In *Plaquemines II*, the Fifth Circuit agreed with the Eastern District of Louisiana and found that those defendants did not act under a federal officer because there was "insufficient evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement indicating that the [defendant] oil companies acted under a federal officer's or agency's directions" and because the defendants' alternative theories on this issue were unpersuasive. *Id.* at *2. Plaintiffs argue that holding applies here since Chevron is a party in *Plaquemines II* and here, and because the facts are similar.[40] Not so. Although Chevron is in both suits, only cases from the Eastern District appealed in *Plaquemines II*. And the *Plaquemines II* court noted that those "who had federal contracts and acted pursuant to those contracts, can likely remove" under § 1442. *Id.*

[39] [Id. at p. 23].
[40] [Id. at p. 24].

at *4. In any event, the Fifth Circuit agreed in *Plaquemines III* that Chevron acted under a federal officer in these cases. *See* 103 F.4th at 334–35. Thus, *Plaquemines III* controls this case and not *Plaquemines II*. Therefore, Plaintiffs' second basis fails too.

Finally, as a Hail Mary, Plaintiffs argue that Chevron cannot rely on their predecessors' contracts because they cannot prove the same corporate "person" produced oil within the OA during World War II and then refined it as avgas for the government.[41] Plaintiffs rely on *Galette v. New Jersey Transit Corporation*, 607 U.S. 509 (2026), to show that each corporate entity is treated separately under the law.[42] That case, however, is easily distinguishable. *Galette* entailed whether a state-created corporation could avail itself of the state's sovereign immunity from suits. *See id.* at 515–19. It said little-to-nothing about the liability of successor corporations for their predecessors' acts. Moreover, Plaintiffs' proposed reading of "persons" would create absurd consequences. Effectively, Plaintiffs can sue the modern successors of former corporations for allegedly wrongful acts taken by their predecessors, but the successor-defendants cannot avail themselves of defenses available to their predecessors because they are not the same corporate person. Plaintiffs cannot have their cake and eat it in this manner. For these reasons, the Court is not persuaded by Plaintiffs' third argument as well.

Hence, the Court concludes that Chevron adequately shows that it acted under a federal officer, the DSC, when it refined avgas for the federal government in World War II. So the Court turns to the second prong of the federal officer removal test.

---

[41] [Id. at p. 21 & n.59].

[42] [Doc. No. 50, pp. 3–4 & n.4].

### 2. Whether Plaintiffs' Suit is Related to Chevron's WWII-era Activities Performed Under a Federal Officer

Section 1442 also requires that Plaintiffs' suit be related to activities Chevron carried out for federal officers. The Supreme Court recently clarified that the words "for or relating to" sweep "broadly." *Chevron*, 146 S. Ct. at 1060. "One thing can relate to another even if the connection is indirect." *Id.* "One thing can relate to another even if it was not specifically designed to affect it." *Id.* "And, one thing can relate to another even without a strict causal relationship." *Id.* In fact, "an act can relate to its consequences even when the causal chain includes actions by intermediaries." *Id.* at 1062. "Accordingly, a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Id.* at 1060.

"The ordinary meaning of relating to, however, is not so broad that it is meaningless." *Id.* It "requires a connection that is not tenuous, remote, or peripheral." *Id.* at 1061. "And, in this context," the "federal officer removal statute [would not be understood] to reach all suits with any attenuated connection to federal duties." *Id.* "For instance, the D. C. Circuit has held that a false-advertising suit targeting an oil company's statements to consumers about the future effects of fossil fuels on climate change did not relate to its decades-earlier production for the Government." *Id.*

This suit challenges Chevron's crude oil extraction and production within this suit's OA.[43] During World War II, Chevron acted under color of federal office when it refined crude oil into avgas for the federal government. So, is a suit challenging the crude oil production related to Chevron's avgas refining? It is.

[43] [Doc. No. 1-1, pp. 24–30].

In *Chevron*, the Supreme Court held that suit was related to Chevron's World War II-era actions taken under color of federal office. 146 S. Ct. at 1061. The Court so held based on the following findings: first, that suit challenged Chevron's crude oil production; second, crude oil is "avgas' essential feedstock"; and third, Chevron used the crude oil it produced for its own avgas refining. *Id.*

Plaintiffs do not dispute that much. But they argue that the Court should distinguish *Chevron* because here, unlike there, the same company that produced crude oil did not use it to refine avgas.[44]

The Court disagrees. Plaintiff's argument properly construes *Chevron*'s holding as it applies to those parties. But the Supreme Court's reasoning for the *Chevron* decision is broader. As the majority there noted, a "thing can relate to another even if the connection is indirect." *Id.* at 1060. "One thing can relate to another even if it was not specifically designed to affect it." *Id.* "And, one thing can relate to another even without a strict causal relationship," *id.*, or "when the causal chain includes actions by intermediaries." *Id.* at 1062. Whereas Plaintiff's construction is effectively the same as Justice Jackson's in *Chevron*. *See id.* at 1063 (Jackson, J., concurring in the judgment) ("I disagree with the majority's conclusion that the federal officer removal statute's "for or relating to" language requires only an indirect relationship between the conduct targeted by the lawsuit and the asserted federal duties."). But that view only got one vote, so it is not controlling.

[44] [Doc. No. 30-2, p. 26]; [Doc. No. 50, p. 5].

Thus, even if one Chevron predecessor produced crude oil and other Chevron predecessors refined it into avgas, that satisfies the Supreme Court's construction. This is so because even "actions taken by intermediaries"—here, avgas refining by a different predecessor than the one that produced the crude oil used to refine the avgas—are sufficient to establish that Plaintiffs suit is "related to" Chevron's World War II-era, federally undertaken avgas refining. *See id.* at 1060.

Plaintiffs' other argument, to the contrary, is also unpersuasive. Plaintiffs argue that the Court's focus should be narrowed to each case's OA.[45] To show why this distinction is important, the Court first lays out what activities Chevron's predecessors did inside and outside each case's OA.

Start with this case. During World War II, Chevron's predecessor, Amerada, operated eight crude oil extraction wells and dug one earthen reserve pit within this case's OA.[46] To access these wells and the reserve pit, Amerada dredged around a half-mile-long canal.[47] Similarly, Chevron predecessor, Pure, also dug two wells within this case's OA during World War II.[48] And to access those wells, Pure dredged a canal almost a mile long.[49] All these canals are also within this case's OA.

Likewise in *Stutes*. There, Chevron's precursor, Unocal, operated three wells, two of which produced oil, during World War II within that suit's OA.[50] To reach these wells, Unocal dredged a canal that was over two miles long within that case's OA.[51]

---

[45] [Doc. No. 30-2, p. 20]; [Doc. No. 50, p. 5].
[46] [Doc. No. 38-37, ¶¶ 31–32 & p. 32].
[47] [Doc. No. 38-33, ¶ 38]; [Doc. No. 38-34, p. 50].
[48] [Doc. No. 38-37, ¶ 33 & p. 32].
[49] [Doc. No. 38-33, ¶ 38]; [Doc. No. 38-34, p. 50].
[50] *Stutes v. BASF*, 26-cv-1336 (W.D. La. April 27, 2026), Doc. No. 64-37 at ¶ 41 & p. 32.
[51] *Id.* Doc. No. 64-33 at ¶ 39, Doc No 64-34 at p. 52.

Thus, Chevron illustrates enough World War II-era activities inside these cases' OAs.

Not so in the remaining related cases. In fact, in all the remaining cases with Chevron (*Bay Coquille*, *BEPCO*, *Ballard*, *BP America*, and *Brammer*), Chevron's exhibits show that none of their predecessors operated wells, dug pits, or dredged canals within those cases OAs during World War II; but their precursors nevertheless performed these activities in the broader Coastal Zone at that time.[52] In these cases, whether the Court focuses solely on a case's OA is, therefore, outcome-determinative.

Back to Plaintiffs' argument. The Court disagrees with Plaintiffs that the Court should adjust its focus to only each case's OA. Plaintiffs' own filings support this conclusion. For starters, examine Plaintiffs' complaint. True, their claims focus on actions Chevron took inside each case's OA,[53] but the prayer for relief requests broader relief—Plaintiffs request the Court to (1) award damages for all violations of Chevron's SCLRMA violations in the entire Coastal Zone, (2) assess costs from Chevron to restore the entire Coastal Zone to its original, pre-oil and gas activities condition, and (3) order Chevron to restore the entire Coastal Zone to its original, pre-oil and gas activities condition.[54] Again, Plaintiffs try to have their cake and eat it.

Now turn to the Rozel Report—Plaintiff's primary expert report. This report, which caused the first round of federal officer-based removals in 2018, clarifies Plaintiffs theory of liability in these cases: land/wetland loss from altered hydrology.[55]

---

[52] *See* [Doc. Nos. 38-33; 38-34; 38-37]. Identical documents in those cases highlight the same fact, so the Court relies on the documents in this case rather than re-citing the ones from all the other cases.
[53] [Doc. No. 1-1, pp. 24–28].
[54] [Id. at p. 36].
[55] *Cameron Par. v. Auster Oil & Gas Inc.*, 18-cv-677 (W.D. La. May 23, 2018), Doc. No. 1-1 at p. 5.

The Rozel Report explicitly states, however, that such hydrological "impacts extend beyond [each] case area boundaries."[56] And as demonstrated by Chevron's expert, Louis Gilbert, Plaintiffs other theory of liability—the oil and gas activities caused land loss by reactivating growth faults" through "hydrocarbon and produced water (brine) production"—also runs into the same problem.[57] Using geo-mapping, Gilbert demonstrates how these faults extend throughout Cameron and Vermilion Parishes, beyond the oil and gas fields, for millions of years.[58] Therefore, this theory too does "not respect [Plaintiff's case-made OA] boundaries."[59]

As such, the Court concludes that for the purposes of federal officer removal, the Court can—and will—examine the broader Cameron and Vermilion Parish Coastal Zones rather than each case's OA.

As noted above, Chevron's predecessors engaged in several oil and gas exploration activities that created crude oil, such as drilling oil wells, creating waste pits, and dredging canals, in the Coastal Zones during World War II.[60] And Plaintiffs suit challenge these very same activities.[61] Since crude oil is "avgas' essential feedstock," *Chevron*, 146 S. Ct. at 1061, and Chevron contracted to produce avgas for the federal government during World War II, this suit relates to actions Chevron undertook under color of federal office.

Accordingly, the Court turns to the final prong for federal officer removal.

---

[56] *Id.* Doc. No. 1-2 at p. 22.
[57] [Doc. No. 38-37, ¶ 43].
[58] [Id. at ¶ 50 & p. 32].
[59] [Id. at ¶ 51].
[60] *See* [Doc. Nos. 38-33; 38-34; 38-37].
[61] [Doc. No. 1-1, pp. 24–28]; [Doc. No. 38, pp. 18–20].

### 3. Whether Chevron Asserts a Colorable Federal Defense

Having met the acting under and related to prongs, Chevron only needs to meet one more requirement before availing itself of this Court's jurisdiction under § 1442: the colorable federal defense prong. The "colorable federal defense requirement does not come from the text of § 1442. Instead, it derives from Article III as a way of meeting 'arising under' jurisdiction." *Plaquemines III*, 103 F.4th at 354 (Oldham, J., dissenting). In this sense, the colorable federal defense requirement limits § 1442 to "Article III's limits" while ensuring § 1442 is still "broad enough to" fulfill one of its primary purposes—litigate "such defenses in the federal courts." *Id.*

"To be 'colorable,' the asserted federal defense need not be clearly sustainable, as § 1442 does not require a federal official or person acting under him to win his case before he can have it removed." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc). Instead, "if a defense is plausible, it is colorable." *Id.* at 297. And an "asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Id.* "Simply acting as a federal employee" is not, by itself, a colorable federal defense. *Plaquemines III*, 103 F.4th at 355 (Oldham, J., dissenting). Preemption, however, is a colorable federal defense in this context. *Id.*

Federal preemption doctrine stems from Article VI of the federal Constitution, which makes the Constitution, and federal law enacted pursuant to it, the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. As such, courts may not "give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210 (1824)).

There are three forms of preemption: express preemption, field preemption, and conflict preemption. *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 473 (5th Cir. 2013). Chevron focuses on conflict preemption. Under that doctrine, federal law preempts state law if (1) complying with both federal and state regulations is physically impossible or (2) state law is an obstacle to accomplishing or executing the full purposes and objectives of Congress. *Boggs v. Boggs*, 520 U.S. 833, 844 (1997).

At the outset, the Court notes that the parties disagree on the scope of the colorable federal defense element. Plaintiffs argue that Chevron's defenses *must* arise out of the "performance of [their] duties" taken while acting under federal office.[62] Plaintiffs then argue Chevron's asserted defenses—preemption, due process, and immunity—do not flow from the official duties it undertook while acting under a federal officer.[63] In support, they cite to *City & County of Honolulu v. Sunoco LP*, where the Ninth Circuit held that the same defenses do not stem from official duties. 39 F.4th 1101. 1110 (9th Cir. 2022). Chevron counters that Plaintiffs are trying to "tack a nexus requirement onto the colorable-federal defense element" in the same way that they "tried to," unsuccessfully, do so for "the relating-to element."[64]

The Court finds it unnecessary to decide the scope of the colorable federal defense prong because Chevron's asserted preemption defense flows from its official acts. The Court respectfully disagrees with the Ninth Circuit for several reasons. First, Ninth Circuit rulings are not binding, but only persuasive, on this Court.

62 [Doc. No. 30-2, p. 27].
63 [Id. at p. 28].
64 [Doc. No. 38, p. 22].

Second, the Ninth Circuit's reasoning is not persuasive because it dismissed this question in a single paragraph that did not cite any authorities to back its holding. *See id.* Third, key to the Ninth Circuit's holding was that those defendants did "not contend that the government ordered" the acts for which they sought preemption. *Id.*

Here, however, Chevron highlights that federal law barred them from, while fulfilling their federal contract work, following the state's preferred alternatives. For instance, Plaintiffs argue that Chevron should have (1) built roads instead of canals to transport their oil with less hydrological impact, (2) built steel tanks instead of earthen pits to store waste with less likelihood of leakage, (3) used thicker steel pipes to avoid accidental discharge, and (4) utilized more eco-friendly drilling practices.[65]

But federal regulations, at the time, forced all oil producers and non-government users to "curtail the use" of any steel products and instead use "wood, glass, paper," or other practical substitutes. Steel and Other Metal Containers, 6 Fed. Reg. 5880 (Nov. 19, 1941). Similarly, the federal government, during World War II, also barred using asphalt or other road paving materials to construct new roads unless approved by the federal government and considered necessary for the war effort. *See* Asphalt Products, 7 Fed. Reg. 5142 (July 7, 1942). The federal government held likewise for road oil and prevented it from being used to pave roads as well. *See* Delivery of Road Oil Prohibited, 8 Fed. Reg. 12571 (Sept. 14, 1943). Finally—and crucially—during World War II, the federal government required oil companies to conserve any material used to produce oil unless there were no practical alternatives.

---

[65] [Doc. No. 38-38, pp. 8–14].

*See* Conservation of Production Material for the Oil Industry, 6 Fed. Reg. 6687 (Dec. 24, 1941). Moreover, the avgas contracts noted earlier in this ruling also required Chevron to do all it can to produce and proffer avgas to the federal government with utmost urgency and all other priorities coming second. Together, these regulations and contracts comprehensively cover Chevron's avgas refining-related activities—activities that Chevron, as noted above, performed under a federal officer.

Since these regulations explicitly covered Chevron's World-War II-era activities performed under a federal officer, they naturally flow from those activities. As such, Chevron may avail the preemption defense based on the above regulations. In this context, the Court concludes that Chevron makes a colorable showing that it could not comply with Plaintiff's preferred practices while also abiding by binding, and seemingly valid, federal laws. Recall, Chevron need not successfully prove their asserted defense, they only need to prove it is plausible. *See Latiolais*, 951 F.3d at 296. And they do just that. This finding, however, is not an ultimate opinion on the merits of the preemption defense. Nor does it preclude Chevron's other defenses.

Therefore, the Court concludes that Chevron also meets the federal officer test's third element.

* * *

In sum, the Court concludes that Chevron acted under a federal officer, the Defense Supplies Corporation, during World War II by way of its avgas refining contracts with the DSC. Plaintiffs' suits are related to Chevron's avgas refining under the DSC because the suit targets Chevron's World War II-era crude oil production.

And crude oil is an essential component of avgas. Finally, Chevron asserts a colorable federal defense, preemption, against Plaintiffs' claims. As such Chevron is entitled to remove their cases from state court to this Court under § 1442.

The Court's conclusion that Chevron satisfies the federal officer removal test means that the entire case is removable as to all Defendants. And ordinarily, it would compel the Court to heed that "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more"—and avoid analyzing Devon's arguments and those of the Other Defendants. *PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment). But since there are other cases without Chevron, yet include Devon and the Other Defendants, the Court finds it best, in the interest of judicial economy, to address those arguments here—once and for all.

Accordingly, the Court turns to whether Devon's removal, on its own, satisfies the federal officer removal test.

### C. Whether Devon Meets the Federal Officer Removal Test

The Court begins with the first prong of the federal officer removal test: whether Devon "acted under" federal officer. Recall, while a private party working under a federal contract is the "archetypal" case of the "acting under" element, such a contract is unnecessary if the private party can "show that a federal officer exerted a sufficient level of subjection, guidance, or control over" them. *Plaquemines III*, 103 F.4th at 334. But mere compliance with a law is insufficient to show assistance "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.*

Devon proffers two theories under which it "acted under" a federal officer. In this case, Devon argues that it also "acted under" federal officers because of its World War II-era oil and gas activities.[66] While Devon raises the same arguments in *Cameron Parish v. Burlington*[67] and *Cameron Parish v. Anadarko*,[68] it also argues it "acted under" federal officers in those cases because of its work at the Rockefeller Wildlife Refuge.[69] The Court examines each theory in turn.

### 1. Whether Devon "Acted Under" a Federal Officer via its Oil and Gas Activities Theory

Devon's briefs in this case and *Burlington* seemingly suggest that Devon's predecessors, like Chevron's predecessors, contracted with the federal government during World War II to provide the federal government with avgas.[70] But, when the Court examined those arguments in depth, it is clear that those arguments, which specify "Removing Defendants," are focused on the oil and gas activities of Devon's co-defendants in each case.[71]

What's more, Devon's brief in *Anadarko* clarifies this finding. There, the only suit where Devon did not jointly file an opposition with Chevron or another defendant, Devon concedes that it neither had any "direct WWII contracts with the Government," nor can it "claim it produced [avgas] pursuant to" such contracts.[72]

---

[66] *See generally* [Doc. No. 38].
[67] *Cameron Par. v. Burlington*, 26-cv-1335 (W.D. La. April 27, 2026), Doc. No. 31 at pp. 27–36.
[68] *Cameron Par. v. Anadarko*, 26-cv-1344 (W.D. La. April 27, 2026), Doc. No. 20 at pp. 21–27.
[69] *Id.* Doc. No. 20 at pp. 12–20; *Cameron Par. v. Burlington*, 26-cv-1335 (W.D. La. April 27, 2026), Doc. No. 31 at pp. 13–23.
[70] [Doc. No. 38, pp. 11–14]; *Cameron Par. v. Burlington*, 26-cv-1335 (W.D. La. April 27, 2026), Doc. No. 31 at pp. 27–29.
[71] [Doc. No. 38, pp. 11–14]; *Cameron Par. v. Burlington*, 26-cv-1335 (W.D. La. April 27, 2026), Doc. No. 31 at pp. 27–29.
[72] *Cameron Par. v. Anadarko*, 26-cv-1344 (W.D. La. April 27, 2026), Doc. No. 20 at pp. 21, 23.

Devon argues that because "Plaintiffs' theory of solidarity liability treats Devon as if it" produced avgas like Chevron and Other Defendants, that is sufficient for Devon to remove the case under the "liberal construction of the 'acting under' element."[73]

The Court disagrees. While the Supreme Court construes "acting under" broadly and liberally, they have not construed it to be "limitless." *Plaquemines III*, 103 F.4th at 334. And the removing private-party-defendant has the burden of showing either "a federal contract to produce an item the government needed" or "that a federal officer exerted a sufficient level of subjection, guidance, or control over the private actor." *Id.* Devon provides neither and, instead, hinges their argument on Plaintiffs' case theory. Yet no Supreme Court or Fifth Circuit authority permits this construction. Moreover, applying Devon's proposed construction would make § 1442 limitless—something the Supreme Court has repeatedly declined to do and, therefore, this Court declines to do so as well.

Since Devon cannot show that it, independently, acted under a federal officer based on its oil and gas activities theory, the Court does not address whether Devon meets the remaining elements of the federal officer removal test. *See PDK Lab'ys*, 362 F.3d at 799 (Roberts, J., concurring in part and concurring in the judgment). Instead, the Court now turns to whether Devon's Rockefeller Wildlife Refuge theory satisfies the federal officer removal test.

### 2. Whether Devon "Acted Under" a Federal Officer via its Rockefeller Wildlife Refuge Theory

[73] *Id.* Doc. No. 20 at p. 23.

At the outset, the Court reiterates that Devon only relies on this theory to remove the *Burlington* and *Anadarko* cases.[74] Since the arguments and theories are identical, the Court analyzes the two jointly but only cites the *Anadarko* record.

Before analyzing this argument, however, a quick primer on the Rockefeller Wildlife Refuge. The Rockefeller Foundation donated the land, which is now the Rockefeller Wildlife Refuge, to Louisiana in 1920.[75] The deed required Louisiana to abide by certain conditions (the "Rockefeller Rules").[76] Louisiana can grant mineral leases in the Rockefeller Wildlife Refuge but only as per the Rockefeller Rules.[77] If Louisiana ever violated the Rockefeller Rules, the property automatically would have returned to the Rockefeller Foundation.[78] But in 1944, the Rockefeller Foundation donated its reversionary interest to the United States Department of Interior, so the property goes to the federal government now.[79] The Louisiana Wildlife and Fisheries Commission primarily administers the Rockefeller Wildlife Refuge.[80]

Relevant here, Devon highlights certain work it performed in the Rockefeller Wildlife Refuge. Specifically, Devon's predecessors worked on the levees in the Rockefeller Wildlife Refuge.[81] To do so, Devon faced some regulatory oversight by the federal government, so, they argue, they acted under a federal officer. [82]

[74] *Id.* Doc. No. 20 at pp. 12–20; *Cameron Par. v. Burlington*, 26-cv-1335 (W.D. La. April 27, 2026), Doc. No. 31 at pp. 13–23.
[75] *Cameron Par. v. Anadarko*, 26-cv-1344 (W.D. La. April 27, 2026), Doc. No. 10-4 at ¶ 2, Doc. No. 10-5.
[76] *Id.* Doc. No. 10-4 at ¶ 2, Doc. No. 10-5.
[77] *Id.* Doc. No. 10-4 at ¶ 2, Doc. No. 10-5.
[78] *Id.* Doc. No. 10-4 at ¶ 2, Doc. No. 10-5.
[79] *Id.* Doc. No. 10-4 at ¶ 3, Doc. No. 10-6.
[80] *Id.* Doc. No. 10-4 at ¶¶ 2–6, Doc. Nos. 10-5–10-9.
[81] *Id.* Doc. No. 23-1 at ¶¶ 15–16.
[82] *Id.* Doc. No. 20 at p. 14.

The Court disagrees. Recall, mere compliance with a law is insufficient to show assistance "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Plaquemines III*, 103 F.4th at 334. Rather, the removing private-party-defendant must show "that a federal officer exerted a sufficient level of subjection, guidance, or control over the private actor." *Id.* That is not the case here. If anything, state officials exerted significant control and guidance over Devon's work in the Rockefeller Wildlife Refuge. After all, the record shows that Devon performed these conservation and repair works for the Louisiana Wildlife and Fisheries Commission with their permission.[83] The federal government, through the United States Fisheries and Wildlife Service, only approved these projects as part of their regulatory scope.[84] But that alone does not establish the level of control required to show that Devon acted under them. *See id.*

To the extent that Devon argues that the state agencies acted under the federal government as the federal government's proxy, the Court is unpersuaded.[85] It is, after all, a fundamental tenet of our federal system that the federal government may not commandeer state governments to perform tasks that the federal government wishes to pursue. *See New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997). Since Devon did not act under a federal officer, the Court leaves for later whether it meets the rest of the federal officer removal test. *See PDK Lab'ys*, 362 F.3d at 799 (Roberts, J., concurring in part and concurring in the judgment).

[83] *Id.* Doc. No. 23-20 at pp. 19–24.
[84] *Id.* Doc. No. 20 at p. 14.
[85] *Id.*

As a result, the Court concludes that Devon did not "act under" a federal officer by way of its work in the Rockefeller Wildlife Refuge. And so, since neither of Devon's proffered bases for removal are adequate, Devon cannot, independently, remove these suits under § 1442. Finally, the Court turns to the Other Defendants.

### D. Whether the Other Defendants meet the Federal Officer Removal Test

Having concluded that Chevron meets the federal officer removal test and Devon does not, it would appear questionable why the Court is addressing whether, collectively, the Other Defendants satisfy the federal officer removal test. True, in this case and the above-discussed cases, answering this question would not change the outcome. But in *Cameron Parish v. Atlantic*, determining whether the Other Defendants meet the federal officer removal test is outcome-determinative. There, former defendant, Exxon Mobil Corporation and Mobil Oil Exploration & Producing Southeast Incorporated (collectively, "ExxonMobil"), removed the case[86] and filed the principal opposition to Plaintiffs' request to remand the case.[87] But shortly thereafter, ExxonMobil settled with Plaintiffs.[88] And while the Other Defendants joined ExxonMobil's opposition to remanding that case, they did not file their own briefs or exhibits.[89] This is similar to the Other Defendants in this case who also did not file their own briefs or exhibits but only adopted Chevron's and Devon's arguments.[90]

[86] *Cameron Par. v. Atlantic*¸ 26-cv-1350 (W.D. La. April 27, 2026), Doc. No. 1.
[87] *Id.* Doc. No. 23.
[88] *Id.* Doc. Nos. 29–31.
[89] *Id.* Doc. Nos. 21–22.
[90] [Doc. Nos. 33–37, 39–45].

While courts construe the federal officer removal statute and test broadly and liberally, it is not construed limitlessly. *See Plaquemines III*, 103 F.4th at 334. Here, without any exhibits that show that the Other Defendants, or their predecessors, "acted under" a federal officer, the Court cannot assume so and allow the Other Defendants into this Court's jurisdiction. The burden of proving federal jurisdiction is, after all, on the removing party. *Id.* at 333. Since the Other Defendants cannot prove so, the Court concludes that they, independently, cannot avail themselves of this Court's jurisdiction under § 1442.

* * *

To summarize, the Court concludes that Chevron satisfies each element of the federal officer removal test. Whereas Devon and the Other Defendants do not satisfy the first element of the federal officer removal test, and they, therefore, cannot avail themselves of federal jurisdiction under § 1442. So, in the following cases, where Chevron is a Defendant, this Court has jurisdiction over said cases and will not remand them:

- *Stutes v. BASF*, 26-cv-1336 (W.D. La. April 27, 2026);
- *Cameron Parish v. Alpine*, 26-cv-1337 (W.D. La. April 27, 2026);
- *Cameron Parish v. Bay Coquille*, 26-cv-1339 (W.D. La. April 27, 2026);
- *Cameron Parish v. BEPCO*, 26-cv-1340 (W.D. La. April 27, 2026);
- *Cameron Parish v. Ballard*, 26-cv-1341 (W.D. La. April 27, 2026);
- *Cameron Parish v. BP America*, 26-cv-1347 (W.D. La. April 27, 2026);
- *Cameron Parish v. Brammer*, 26-cv-1349 (W.D. La. April 27, 2026).

But in the following cases, where Chevron is not a party, this Court does not have jurisdiction over said cases and will remand them:

- *Cameron Parish v. Burlington*, 26-cv-1335 (W.D. La. April 27, 2026);
- *Cameron Parish v. Anadarko*, 26-cv-1344 (W.D. La. April 27, 2026);
- *Cameron Parish v. Atlantic*, 26-cv-1350 (W.D. La. April 27, 2026).

Since the Court concludes that it must remand those three cases, it now turns to Plaintiffs' requests for costs and fees.

### E. Whether the Court Should Award Plaintiffs' Attorneys' Fees and Costs

Courts may, when they remand a case back to state court, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for" removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also Howard v. St. Germain*, 599 F.3d 455, 457–58 (5th Cir. 2010) (same).

Plaintiffs argue Defendants' removal based on the World War II-era avgas production theory qualifies for costs and fees under § 1447(c) because it is untimely and meritless.[91] Plaintiffs likewise argue that Defendants' Rockefeller Wildlife Refuge theory-based removal also qualifies for costs and fees under § 1447(c) because it "is frivolous at best, and untimely."[92] The Court disagrees with both.

[91] [Doc. No. 30-2, p. 30].

[92] *Cameron Par. v. Anadarko*, 26-cv-1344 (W.D. La. April 27, 2026), Doc. No. 10-2 at p. 30.

Start with Plaintiffs' argument about Defendants' World War II-era avgas production theory. In only one case, *Cameron Parish v. Atlantic*, did that theory fail. And that is because the removing defendant in that case, ExxonMobil, settled, leaving only the Other Defendants, who (1) did not remove the case and (2) only failed to prove federal officer removal because they merely adopted ExxonMobil's arguments without producing their own evidence to support that argument.[93] In this instance, the Court finds awarding sanctions unreasonable and wholly inappropriate.

Now turn to Plaintiffs' arguments about Devon's Rockefeller Wildlife Refuge theory. While the Court ultimately disagrees with Devon that its conservation actions in the Rockefeller Wildlife Refuge constituted "acting under" a federal officer, that was a colorable argument. It did not sway the Court, in the end, because after intensive fact-finding, the Court determined that the federal government oversight of Devon in that context was not significant enough to meet the federal officer removal test's "acting under" element.[94] But that argument is still "an objectively reasonable basis for" removal. *Martin*, 546 U.S. at 141; *Howard*, 599 F.3d at 457–58. Ergo, the Court does not impose costs or fees on Defendants for raising this argument either.

While the Court understands, and to some extent sympathizes with, Plaintiffs' perceived frustration over these jurisdictional issues hampering their ability to litigate the merits of these cases, the Court's duty, from this Nation's founding, is only "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

---

[93] *See supra* Part III.D.
[94] *See supra* Part III.C.2.

In so doing, the Court, as it should, sets aside any policy preferences or non-legal influences that underly these cases.

## IV. Conclusion

For the above-stated reasons,

**IT IS ORDERED** that the Motion to Remand [Doc. No. 30] filed by Plaintiffs, the State of Louisiana and Cameron Parish, is **DENIED**.

MONROE, LOUISIANA, this 19th day of August 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE